# Nellis, Garnishee, *versus* Coleman, for use, etc.

f  98  SC  465
   29      1  17

1. Where a contract of subscription in writing is entered into by sev- eral parties, the construction of such contract is for the court and not for the jury.

2. A., B., and several others signed a contract of subscription, whereby each agreed to advance a certain sum of money to a corporation to pro- mote an industrial enterprise.   The corporation contracted to repay the various advances as soon as possible, and undertook to pay to the various subscribers its entire income for the ensuing three years.   A. paid the amount of his subscription.   B. failed to do so.   Subsequently the cor- poration passed a resolution abrogating the terms of the subscription, and in a few months failed.   A. then brought an action against the corpora- tion to recover the amount of his subscription, and obtained judgment. Subsequently he caused a writ of attachment execution to be issued upon said judgment, wherein B. was summoned as garnishee, but said writ was not issued until more than three years after the execution of the original contract of subscription.   *Held*, that B.'s contract was merely to loan money to the corporation upon the terms stipulated in the contract of

2 OUTERBRIDGE—30

[Nellis *v.* Coleman, for use.]

subscription, that those terms being abrogated, the corporation having failed, and the time within which it was implied that he was to loan the money having passed, the company had no semblance of right to force him to loan the money. *Held*, further, that A., standing in the shoes of the company, had no further or other rights than were possessed by it, and that the garnishee was therefore entitled to judgment.

3. Where in a contract of subscription by several there is no agreement between the various subscribers to pay or to guarantee the payment of each other's loans, and afterwards one subscriber fails to advance the amount which he has agreed to loan, another subscriber who has paid his subscription cannot, upon obtaining judgment against the borrower therefor, compel the delinquent promisor as garnishee in an attachment execution to pay what he has promised to loan.

4. Where on the trial of a cause a party has raised an insufficient objection to an offer of evidence, which is overruled, the evidence being admitted, he cannot subsequently object to the testimony on other and valid grounds.

October 4th 1881.    Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.  SHARSWOOD, C. J., absent.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term 1881, No. 23.

Attachment execution, by Columbus Coleman against the Tradesmen's Industrial Institute, defendant, and A. J. Nellis, garnishee.

On the trial, before COLLIER, J., the following facts appeared : The Tradesmen's Industrial Institute was incorporated December 19th 1874, under the Act of April 29th 1874, for the advancement of the industrial arts.  The company entered into a contract for the erection of an exposition building on Smoky Island, Allegheny City, and in order to raise money to pay for the same, the board of directors devised a scheme for raising a guarantee fund of $50,000, in accordance with the terms of the following resolution, adopted July 16th 1875 :

"At a meeting of the board of directors of the Tradesmen's Industrial Institute, the following preamble and resolution were adopted, to wit :

"Whereas, It is apparent that sufficient funds cannot be raised by voluntary contributions to erect a building and provide for the incidental expense of holding an exhibition of the Tradesmen's Industrial Institute the present year, therefore,

" *Resolved*, That we invite loans and advancements of money from members of the association and others to the aggregate amount of $50,000, upon the following terms, viz. :

" No subscription to be binding unless the sum of $50,000 is subscribed.  All sums so advanced in the nature of loans for the purpose aforesaid, shall be repaid as soon as possible out of the income of the association from all sources, and in addition to the

[Nellis *v*. Coleman, for use.]

refunding of said principal sums, the profits made by the association for three successive years shall be paid to the individuals making said advancements, pro rata.

" Therefore in consideration of the premises, we the undersigned, subscribe and agree to pay to the said association for the purpose and upon the terms aforesaid, the sums set opposite our names respectively.   It is understood that said loan of $50,000 is to consist of fifty shares of the the par value of $1,000 per share.

| " A. J. Nellis, | . | . | . | . | 10 | $10,000. |
| " Columbus Coleman, | | . | . | . | 10 | 10,000." |
| * | * | | * | | | * |

Other subscribers signed this paper, to the extent of over $50,000.   Columbus Coleman paid the amount of his subscription, $10,000, to the company in cash, and some other subscribers paid in the amounts subscribed by them, but Nellis, who was president of the company, paid nothing on account of his subscription.   On May 17th 1876, the board of directors passed the following resolutions :—

" Whereas, Certain gentlemen who have been currently known as guarantors have advanced certain sums of money ; and, Whereas, It is thought desirable to dispense with the guarantee fund, and merge the debts of the institution under the control of the corporation ; therefore, *Resolved*, That the corporation hereby agrees to issue bonds or notes to guarantors and creditors for the amount due to, or in such manner as may be mutually agreed upon.   *Resolved*, That for the money advanced by the guarantors and services rendered by them for the corporation, such compensation shall be made as shall be determined by the board.   *Resolved*, That the notes or bonds of the corporation at rates of interest not exceeding ten per cent. (10 per cent.) per annum, signed by the president and treasurer, be made and delivered to the guarantors and creditors for the amounts due them respectively, payable          months·after date."

Coleman declined to accede to this arrangement, and brought suit against the company for the amount of his subscription, and recovered judgment in 1876 therefor, on the ground, as shown by the pleadings, that said subscription was a loan to the corporation.   He afterwards, on June 17th 1878, issued this attachment execution against Nellis, garnishee, claiming that Nellis was indebted to the company, inter alia, for the amount of his said subscription.

The plaintiff offered in evidence the subscription paper, and proved the signature of Nellis.   Objected to, as incompetent and irrelevant ; objection overruled ; exception.

[Nellis *v.* Coleman, for use.]

The defendant requested the court to charge that there was no sufficient evidence of subscription to the amount of $50,000, and therefore no subscription was binding; that the construction of the subscription paper was for the court, and that it was a mere agreement to advance money to the company as a loan, and was not attachable by the plaintiff as a debt; that Coleman, having recovered judgment for the sum subscribed and paid by him, on the ground that it was a loan, cannot enforce payment of Nellis's subscription as a debt; that by the resolutions of May 17, 1876, abolishing the guarantee fund, Nellis was absolved from any liability whatever to pay his subscription.

The court declined to charge as requested, and submitted the paper to the jury, instructing them, substantially, that if they believed the subscribers agreed with the Institute and with each other to pay the sums set opposite their names, and that debts were contracted on the faith of such agreement, Nellis can be compelled to pay his subscription to the Institute, or to its judgment creditor, notwithstanding the resolutions of May 17th 1876, because the board had no power to release him as long as there were others interested—otherwise if the jury found that it was a loan.

Verdict for the plaintiff and against the garnishee, for the full amount claimed, and judgment thereon. The garnishee took this writ of error, assigning for error the admission in evidence of the subscription paper; the refusal of the court to charge as requested, and the submission to the jury of the question whether the contract of subscription was a debt or a loan.

*Joel L. Bigham* (*A. M. Brown* with him), for plaintiff in error.—The subscription paper provided, " No subscription to be binding unless the sum of $50,000 is subscribed." The plaintiff failed to prove the signatures to the full amount, and the paper was therefore improperly admitted in evidence. But, if admissible, its construction was for the court, and its true construction, in our view, was embodied in our points, which should have been affirmed : Welsh *v.* Dusar, 3 Binney 329; Heath *v.* Page, 12 Wright 143; Beatty *v.* Insurance Co., 2 P. F. Smith 456.

*J. W. Kirker,* for the defendant in error.—On the faith of mutual subscriptions exceeding the proposed amount of the guarantee fund, the company contracted debts to a large amount, and thus the subscriptions became due and enforceable as debts, by the company or its creditors. Nellis, at least, was estopped from denying his liablitity, as he was the president and one of the promoters of the company ; he acted as chairman of the execu-

tive committee, and enforced the subscription paper by collecting $24,000 from Coleman and others of the subscribers. The subsequent resolutions which, it is claimed, released the unpaid subscriptions, were beyond the power of the board, and they were never carried into effect.

Mr Justice TRUNKEY delivered the opinion of the court, October 31st 1881.

The Tradesmen's Industrial Institute invited loans and advances from its members and others, upon terms that no subscription should be binding unless $50,000 were subscribed; that all sums so advanced in the nature of loans should be repaid as soon as possible out of the income of the association from all sources, and in addition to refunding the principal sums, the profits for three years should be paid to the persons making the advancements pro rata; and that the loan should consist of fifty shares of the par value of $1,000 each. More was subscribed than was asked. Coleman and some others loaned the amounts they subscribed, but some of the parties, including Nellis, neglected or refused to make the loan.

The subscription was a mutual agreement to loan money to the corporation, and was so understood and acted upon by all parties. The instant the money was advanced it became a debt of the corporation. Whether the borrower had the right to pay it, or the lender to demand repayment, immediately, is immaterial in this action. Nor is the question in any way raised, whether a subscriber, who refused to make the loan, became liable for damages to the corporation, or to his co-subscribers. The contract was dated July 16th 1875, and within a year thereafter the company resolved to give its notes to all its creditors, discriminating in favor of those who had paid cash on the guaranty fund by contracting for a higher rate of interest. No subscriber was bound to loan on these terms. As early as March 1876, and before the date of that resolution, Coleman brought suit for the amount he had loaned, declaring on oath it was a loan, and in due course of procedure recovered judgment. The company failed. After that resolution, and after its failure, the company had not a semblance of right to demand of a subscriber that he advance the money. But aside from the resolution and failure, if by the terms of the subscription it was implied that the loan should be for three years, that time had ended before this suit against Nellis. Under the uncontroverted facts the company could recover nothing on the contract for a loan. Its creditor, by attachment in execution, has no better right.

It is urged that in equity the plaintiff ought to recover against the garnishee. This is not apparent. There was no

[Schneider *v.* N. Y., &c. Gas and Coal Co.]

agreement between the subscribers to pay, or to guarantee the payment of each other's loans. Coleman did not promise to pay Nellis whatever sum he should loan to the company, nor did Nellis make such promise to Coleman. If this judgment stands Nellis will be compelled to pay another's debt, although he in no wise became surety for it. Had Nellis made the loan he could have recovered judgment in like manner as Coleman did, and would have as good right to demand payment of Coleman, as Coleman has of him. Conceding the validity of the contract between the corporation and Nellis, specific performance would not be decreed in equity, and at law the corporation could recover at most only nominal damages. Where two men agree that each will loan a third a sum of money, and one keeps and the other breaks his promise, no legal principle will enable the lender to compel the other promisor, as garnishee in an execution attachment, to pay what he had promised to loan to said third person.

The construction of the contract was for the court, and it was error to submit to the jury to determine whether the amount subscribed was a debt owing to the corporation, or a loan to be made. The learned judge rightly ruled that if it was a loan Nellis did not owe any thing on the contract.

The assignments of error relating to the admission of the subscription paper in evidence cannot be sustained. It is now too late to object that the handwriting of the several subscribers was not proved. At the trial the objection was, " incompetent and irrelevant," and that was rightly overruled.

> Judgment reversed, and venire facias de novo awarded.